**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

IN RE: BUSINESS COMMUNICATIONS OF           Case No. **04-40289**-DOT
    VIRGINIA, INC., d/b/a ETELSUPERSTORE.COM
    Chapter 7 Debtor

**KEITH L. PHILLIPS, TRUSTEE**
    Plaintiff

    v.                                       Adversary Proceeding No. **06-03150**-DOT

**GHASSAN HABBOUSH,**
    a/k/a Gus Habboush
         Defendant

## MEMORANDUM OPINION

Trial in this adversary proceeding was held on March 18, 2008. Plaintiff Keith L. Phillips, trustee in bankruptcy for the debtor, seeks to recover a preferential transfer in the amount of $14,500.00 along with a monetary judgment representing unpaid loans from debtor to defendant in the net amount of $163,000.00. Following trial, the parties submitted proposed findings of fact and conclusions of law. This opinion constitutes the court's findings of fact and conclusions of law required by Fed. R. Bankr. P. 7052.

For reasons stated in this opinion, the court will enter judgment against defendant in the amount of $99,130.97.

<u>Findings of Fact.</u>

Debtor Business Communications of Virginia, Inc., d/b/a Etelsuperstore.com filed a chapter 7 bankruptcy petition in this court on November 5, 2004. Plaintiff trustee Keith L. Phillips was appointed and continues to serve as debtor's trustee in bankruptcy. This adversary proceeding was initiated by trustee's November 3, 2006, complaint seeking to avoid transfers

and to recover property of the estate.

The principals of the debtor were Milad Habboush (also known as Chris Habboush) and George Habboush. George Habboush died in February 2005, during the pendency of the bankruptcy case. Milad Habboush filed an individual chapter 7 case on April 15, 2005. (Bankruptcy Case No. 05-33534) On February 6, 2007, following a complaint filed by the trustee and subsequent trial, this court entered an opinion and order denying Milad Habboush's discharge based upon his failure to maintain or preserve the debtor's corporate books and due to his transfer of assets of the debtor with intent to hinder, delay, or defraud creditors. (Adv. Pro. No. 06-03082.)

Prior to its bankruptcy, debtor operated a cellular phone and pager business in Richmond, Virginia, under the name of eTelsuperstore.com. For some years before debtor filed its bankruptcy petition, debtor transferred or conveyed substantial assets, including negotiation of checks, to one or more members of the Habboush family for little or no consideration. It was in part as a result of these transfers that the court denied the discharge in bankruptcy of debtor's principal Milad Habboush. On June 13, 2008, this court entered a monetary judgment against Habib and S.H.H. Habboush, the mother and father of George and Milad Habboush, based upon assets improperly transferred by debtor to these defendants. (Adv. Pro. No. 05-03132)

Defendant Ghassan Habboush (Gus Habboush or defendant) is the uncle of Milad Habboush and George Habboush and brother of Habib Habboush.

PREFERENCE PAYMENT

On October 29, 2004, one week prior to its petition date, debtor transferred the sum of $14,500.00 to defendant. This transfer was to repay a loan by defendant to debtor in the amount

2

of $14,000.00 on July 22, 2004. Thus the transfer was payment of an antecedent debt owed by debtor to defendant, made while debtor was insolvent, and which enabled defendant to receive more than he would have otherwise received in debtor's chapter 7 case.

OTHER MONEY TRANSFERS

For some years prior to debtor's bankruptcy petition the company made other transfers of money to defendant. Also, defendant transferred sums to debtor and to debtor's principals.

The following schedule reflects money transfers from debtor to defendant from August 1, 1998, to the date of debtor's bankruptcy on November 5, 2004:

| Date | Amount | Check Notation |
|---|---|---|
| August 1, 1998 | $ 50,000.00 | loan payoff |
| December 8, 1998 | 60,000.00 | loan |
| March 24, 2000 | 40,000.00 | repay loan |
| February 28, 2002 | 100,000.00 | Dogwood North Retirement |
| June 26, 2002 | 30,000.00 | |
| September 26, 2002 | 1,000.00 | pay back down payment on house |
| Total | $281,000.00 | |

(Pl. Exs. 7 - 12.)

The following schedule reflects money transfers by defendant to debtor from March 12, 2000, to the date debtor filed bankruptcy:

| Date | Amount | Check Notation |
|---|---|---|
| March 12, 2000 | $ 40,000.00 | loan |
| July 7, 2000 | 30,000.00 | loan |
| February 8, 2002 | 18,000.00 | |
| June 14, 2002 | 20,000.00 | loan |
| June 14, 2002 | 10,000.00 | loan |
| Total | $118,000.00 | |

(Def. Exs. A, B, C, D, E, F, L.)

3

The following schedule reflects money transfers by defendant to principals of debtor from October 23, 2002, to the date of debtor's bankruptcy.

| Date | Amount | Payee | Check Notation |
|---|---|---|---|
| October 23, 2002 | $ 10,000.00 | Milad Habboush | Edward Ave. |
| December 20, 2002 | 7,869.03 | Wachovia Bank (Cashier's Check) | Quash |
| March 17, 2003 | 15,000.00 | George Habboush | loan Quash St. |
| January 30, 2004 | 2,500.00 | George Habboush | loan |
| July 12, 2004 | 3,000.00 | George Habboush | personal loan |
| Total | $ 38,369.03 | | |

The Wachovia Bank cashier's check was paid to George Habboush. (Def. Exs. G, H, I, J, K.)

Discussion and Conclusions of Law.

The trustee's complaint sought to recover judgment against defendant based in part upon alleged improprieties by defendant related to his receiving money or property from debtor for inadequate consideration. These alleged improprieties are no longer asserted by the trustee. Only two issues remain: 1) whether trustee is entitled to judgment against defendant with respect to the $14,500.00 preference payment to defendant on October 29, 2004, and 2) whether trustee is entitled to judgment with respect to an indebtedness of defendant to the estate arising out the money transfers listed above.

PREFERENCE PAYMENT, 11 U.S.C. § 547

As found by the court, debtor paid defendant $14,500.00 on October 29, 2004, within 90 days of debtor's bankruptcy petition. The payment was made one week before debtor filed its bankruptcy petition on November 5 and was in repayment of an antecedent debt. The evidence at trial indicates the transfer was to repay defendant's loan to debtor in the amount of $14,000.00 on July 22, 2004.

Section 547 of the Bankruptcy Code authorizes a trustee to avoid a preference, which is a type of prohibited pre-petition transfer made by a debtor to a creditor. *See* 11 U.S.C. § 547(b); *Lubman v. C.A. Guard Masonry Contractor, Inc. (In re Gem Constr. Corp. of Va.),* 262 B.R. 638, 644 (Bankr. E.D. Va. 2000). Specifically, a preference is:

> any transfer of an interest of the debtor in property –
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made –
>    (A) on or within 90 days before the date of the filing of the petition . . .
> (5) that enables such creditor to receive more than such creditor would receive if –
>    (A) the case were a case under chapter 7 . . . ;
>    (B) the transfer had not been made; and
>    (C) such creditor received payment of such debt. . . .

11 U.S.C. § 547(b).[1]

The defendant does not contest that the October 29, 2004, loan repayment constituted a preference. However, in opposition to the trustee's claim, defendant asserts the ordinary course of business affirmative defense provided by § 547(c)(2). Under this defense, a trustee may not avoid a preferential transfer:

> (2) to the extent that such transfer was –
>    (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
>    (B) made the in ordinary course of business or financial affairs of the debtor and the transferee; and
>    (C) made according to ordinary business terms;

---

[1] Debtor's bankruptcy case, having been filed in 2004, is not governed by the amendments to the Bankruptcy Code that were enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. No. 109-8, § 1501, 119 Stat. 23.

5

11 U.S.C. § 547(c)(2).

Defendant acknowledges that he has the burden to prove each of the three elements of the affirmative defense of § 547(c)(2).

**Section 547(c)(2)(A).**

The first element of proof is to show that the debt was incurred in the ordinary course of debtors' business or financial affairs, meaning that the incurring of this debt was a "logical and ordinary action for these parties." *Harman v. First Am. Bank of Md. (In re Jeffrey Bigelow Design Group, Inc.),* 956 F.2d 479, 488 (4th Cir. 1992).

Defendant loaned debtor $14,000.00 on July 22, 2004. The trial record discloses that defendant wire transferred this sum payable to "Business Communications"; the indicated source of the funds was a VISA account of defendant. (Def. Ex. L.) Trustee's exhibit 3 is debtor's check no. 1122 dated October 29, 2004, payable to defendant in the amount of $14,500.00. Defendant testified that this check was in repayment of the loan of July 22. The notation on the check is "Repay Loan For Payroll." (Pl. Ex. 3). This evidence satisfies defendant's burden to show that the $14,000.00 loan was in the ordinary course debtor's business.

(The trial record discloses that defendant had made loans to debtor to enable it to meet payroll on one other occasion. Defendant testified that on June 14, 2002, he had made two loans to debtor in the total amount of $30,000.00. These were sums debtor needed for payroll, and the loans were repaid by debtor on June 26, 2002.)

**Section 547(c)(2)(B).**

The second element of the affirmative defense is that debtor must have made the transfer in the ordinary course of business or financial affairs of debtor and the defendant transferee. This

is the so-called subjective test: whether the parties themselves considered the transaction ordinary. *In Re Gem Constr. Corp.*, 262 B.R. at 655. The court has previously set out schedules of moneys exchanged by defendant and debtor beginning during the years preceding debtor's bankruptcy filing. Defendant's testimony, which is not disputed by the trustee, is that these exchanges of money were loans and loan repayments.

The lending relationship between defendant and debtor was unusual to say the least. Loans were made and repaid by each with no discernable pattern other then the apparent financial needs or abilities of one or the other. Defendant testified that George Habboush, his nephew and president of debtor, would come to him for financial help with the debtor's business and also for real estate investments. According to defendant, he would make loans to debtor; debtor would repay when it received funds, often within a matter of days.[2] Defendant's $30,000.00 loan to debtor for payroll, mentioned previously, is a good example. This loan was made (by two checks) on June 14, 2002, and repaid to defendant on June 26, 2002. This payroll loan and the contested preference repayment of $14,500.00 are the only loans that appear to have been connected to debtor's payroll requirements.

The court has been unable to find in defendant's testimony at trial or in his deposition of February 29, 2008, any reference to the loan of $14,000.00 on July 22, 2004, which was repaid on October 29, 2004. The only evidence of the loan's purpose is the notation on the repayment check indicating it was for debtor's payroll.

Because there is no direct evidence, the court is left to speculate on whether the parties

---

[2] As revealed in the cash transfer schedules, defendant also made cash transfers to individuals rather than to debtor. These transfers are discussed below.

themselves regarded the loan repayment four months later as in the ordinary course of their business or financial affairs. As noted above, the only other payroll loan was repaid to defendant in less than two weeks. It is worth noting that the two payroll loans were the only cash transfers revealed in the evidence to have been directly related to debtor's business. In view of the way defendant and his nephew transacted their affairs, it is arguable that they both would consider any loan repayment at any time as within their regular way of conducting business. Such an argument is unacceptable. Not only was the second payroll loan repaid months later than the first, it was repaid one week prior to debtor's bankruptcy and most likely after debtor had consulted its bankruptcy counsel in "October 2004." (Pl. Ex. 31.) Debtor's loan repayment to a relative of its president in imminent anticipation of filing bankruptcy scarcely constitutes an ordinary course of business transaction. Accordingly, the court concludes that defendant has failed to carry his burden under § 547(c)(2)(B).

**Section 547(c)(2)(C).**

The third element plaintiff must satisfy is that the repayment transfer was made "according to ordinary business terms." 11 U.S.C. § 547(c)(2)(C). This is the so-called objective test: whether the relevant industry would consider the payment to have been made according to ordinary business terms. *In re Gem Constr. Corp.*, 262 B.R. at 655-56. Defendant concentrates his ordinary course argument on this test, asserting that the "close familial relationship and consistent pattern of loans and subsequent repayments illustrate that such loans were made in the ordinary course of the business relationship. . . ." He argues that he had an established and steady relationship with debtor, which made the industry standards less relevant. Defendant's position relies on a "sliding scale test" for the ordinary course of business objective test adopted by the

Fourth Circuit in *Advo-System, Inc. v. Maxway Corp.*, 37 F.3d 1044 (4th Cir. 1994); *see also In re Gem Constr. Corp.*, 262 B.R. at 656.

The sliding scale test relied upon by defendant derives from the Fourth Circuit's ruling in *Advo-System, Inc*. In that case, the Fourth Circuit found that subsection C of § 547(c)(2) requires proof that debtor made its pre-petition preferential transfer in harmony with the range of credit terms prevailing in some relevant industry's norm. 37 F.3d 1044, 1048. The extent to which a preference payment's credit terms can stray from the industry norm yet still satisfy subsection C depends on the duration of the debtor-creditor relationship. *Id.* at 1049. "[T]he more cemented (as measured by its duration) the pre-insolvency relationship between the debtor and the creditor, the more the creditor will be allowed to vary its credit terms from the industry norm yet remain within the safe harbor of § 547(c)(2)." *Id.,* quoting *Fiber Lite Corp. v. Molded Acoustical Prods., Inc. (In re Molded Acoustical Prods., Inc. )*, 18 F.3d 217, 225 (3d Cir. 1994). In summary, where there has been "an enduring, steady relationship" between the parties that has not changed significantly "during the pre-petition insolvency period," the creditor may "depart substantially from the range of terms established under the objective industry standard. . . ." *Id.*

> To apply this sliding-scale approach to ascertain the appropriate benchmark from which one determines whether a preference payment's credit terms are unusual, the court must: (1) look at the range of terms on which firms comparable to the creditor provide credit to firms comparable to debtor; (2) look to the length of the parties' relationship predating debtor's insolvency to estimate the size of the customized window surrounding the industry norm which was established in the first step; and (3) determine whether the relationship remained relatively stable leading into and throughout the insolvency period. (citation omitted)

*In re Gem Constr. Corp.*, 262 B.R. at 656.

The court finds that debtor has failed to demonstrate that the Fourth Circuit's sliding scale approach has any application to the present case. First, there is no evidence whatsoever of

9

the range of credit terms provided by "firms comparable" to defendant to firms comparable to debtor. It is apparent that defendant is in no position to offer testimony as to the range of credit terms for transactions comparable to those in which he participated. Second, without an "industry norm," any attempt to determine the length of defendant's relationship with his nephew and the debtor becomes meaningless. Moreover, there is no evidence of when debtor became insolvent. Third, it is difficult to characterize the parties' relationship as "relatively stable" in view of the helter-skelter lending arrangements of defendant and his nephew. The cash exchanging pattern of these related parties can scarcely be of the nature envisioned by the Fourth Circuit in *Advo-System, Inc.*

Defendant's argument on the third element is no more than an assertion that the parties met the subjective standard of § 547(c)(2)(B), an approach previously rejected by the court. Moreover, "subsection C never tolerates a gross departure from the industry norm, not even when the parties have had an established and steady relationship." *Id.* at 1050. Finally, a credit payment to a relative where the payor will almost immediately be filing bankruptcy could hardly be in the ordinary course business whatever the industry.

TURNOVER OF DEBT OWED BY DEFENDANT TO ESTATE, 11 U.S.C. § 542(b)

In count X of his complaint, trustee seeks turnover of property pursuant to § 542(b) based upon two loans from debtor to defendant, each alleged to be in the amount of $100,000.00. The first loan alleged was on February 28, 2002, and the second, "an additional $100,000.00" loan with no stated date. The court has made findings of money transfers among defendant, debtor and debtor's principals as revealed by the evidence during the years preceding debtor's bankruptcy filing. The evidence disclosed the $100,000.00 transfer to defendant from debtor on

February 28, 2002, but there was no evidence of an additional loan of $100,000.00. During trustee's trial testimony, he acknowledged he had been unable to find evidence of a second loan of $100,000.00. However, he did produce evidence of the other transfers from debtor to defendant as shown in the court's findings.

Section 542(b) provides in part as follows:

> . . . [A]n entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

11 U.S.C. § 542(b). See 5 COLLIER ON BANKRUPTCY ¶ 542.03 (Alan N. Resnick & Henry J. Sommer eds., 15th ed.)

Trustee seeks judgment against defendant for the amount of defendant's indebtedness to debtor. Although all the money transfers from debtor to defendant were not listed in debtor's complaint, these transfers were fully disclosed to defendant in preparation for the trial and admitted at trial without objection. The court will therefore analyze all of the transfers and determine what amount, if any, remains owed by defendant to debtor. Defendant is, of course, entitled to offset any repayment made by him to debtor pursuant to § 553. (This discussion excludes the $14,000.00 loan of July 22, 2004, and preference repayment on October 29, 2004, which is treated separately above.)

Although defendant was never an officer, director or employee of debtor, the trustee presented evidence suggesting defendant was more involved in the company's affairs than he was willing to acknowledge at trial. This would seem to be borne out by the large sums of cash he received from debtor. However, because of the absence of adequate records of debtor's operations (which led the court to deny the discharge of Milad Habboush), the full extent of

defendant's involvement can probably never be known. For purposes of determining defendant's remaining liability to debtor, defendant's involvement in debtor's business is not critical.

Defendant testified that he often provided financial assistance to the corporation at the request of his nephew George Habboush. The schedules of transfers reveal that defendant also transferred funds to both his nephews who were the individual principals of debtor. According to defendant, he had an understanding with George that his transfers to George were for the benefit of the debtor. Defendant maintained this position even though the transfers to George were without exception unrelated to debtor's business operations. Defendant's testimony acknowledges, in other words, that George used the debtor corporation as a personal bank account without regard to corporate identity. The money transactions illustrate, to say the least, the highly unorthodox business methods of the Habboushes. As noted previously, the court previously entered judgment against defendant's brother Habib Habboush based upon his receipt of valuable assets from debtor that were not supported by consideration.

In spite of debtor's highly questionable business practices of making large cash transfers to family members, including defendant in this case, the trustee asserts only that defendant has not fully repaid loans and that defendant should be held accountable under § 542(b) for the unpaid balance. Thus, the only decision to be made by the court requires a determination of how much money defendant owes to debtor's bankruptcy estate.

From August 1, 1998, to June 26, 2002, debtor transferred a total of $281,000.00 to defendant. With respect to these transfers, defendant argues that the earliest transfers of $50,000.00 and $60,000,00 on the respective dates of August 1, 1998, and December 8, 1998, are uncollectible because they are barred by the five year Virginia statute of limitations. VA.

CODE. ANN. § 8.01-253 (2001). (The transfers were made to defendant more than five years before debtor filed bankruptcy.) This argument must be rejected. Trustee is not attempting to collect these specific payments. Rather, he is seeking to collect the defendant's indebtedness to debtor. In fact, if the two transfers are treated as loans to defendant, then he repaid those loans by his transfers to debtor in years 2000 and 2002. Trustee is effectively seeking to collect transfers defendant received in 2000 and 2002. These are not time barred.

There is another issue about the two 1998 checks to defendant not raised by the parties. The notation on the check of August 1, 1998, is "loan payoff" and that of December 8, 1998, is "loan." These notations furnish some evidence as to the purpose of the transfers. There is no evidence concerning significant transfers between defendant and debtor in years prior to 1998.[3] The record does not reveal when the debtor commenced operations or when defendant started providing it financial assistance. However, if the August 1, 1998, transfer was to repay defendant a previous loan made by him to debtor, then this transfer should not be included in the amount he still owes. This is a logical if not a completely satisfactory conclusion. By the same logic, the December 8, 1998, transfer, according to the notation on the check, was a loan to defendant that must be included in his account for repayment.

Thus debtor transferred a total of $231,000.00 to defendant during the years preceding bankruptcy, which the court treats as loans requiring repayment ($281,000.00 less $50,000.00).

The schedule of defendant's transfers to debtor reveals that during the same general period preceding bankruptcy, defendant made total repayments of $118,000.00 to debtor. The

---

[3] The only evidence of other cash transactions in 1998 is a check from debtor to defendant dated January 3, 1998, in the amount of $15,070.00. This was repayment of a loan made by defendant on December 4, 2007. (Def. Ex. A, Pl. Ex. 12; Tr. 84.)

13

court finds that these payments entitle defendant to credit or offset against his withdrawals from debtor.

The final issue with respect to defendant's indebtedness is whether he is entitled to offset the payments made by him to either George or Milad Habboush. Defendant claims that at least part of these payments, which total $38,369.03, should be credited to his liability to debtor. The notations on these checks indicate they were all personal loans by defendant to Milad or George. At trial, defendant testified that based on his understanding with George, the checks to George were repayment by him toward the $100,000.00 loan of February 28, 2002. He did not testify that this was true of the $10,000.00 payment to Milad. (Tr. 120.) Because there is no evidence to the contrary, the court gives defendant the benefit of the doubt regarding the offset by these payments. Defendant will therefore be allowed an offset for $28,369.03 due to his payments to George Habboush.

Accordingly, defendant is indebted to the bankruptcy estate in the amount of $84,630.97 ($231,000.00 reduced by offsets of $118,000.00 and $28,369.03).

SUMMARY

The plaintiff trustee will be awarded judgment against defendant in the amount of $99,130.97, consisting of 1) $14,500.00 as a preference pursuant to § 547 and 2) $84,630.97 for indebtedness to debtor's estate pursuant to § 542(b). A separate order will be entered.

Signed: August 5, 2008.

    /s/ Douglas O. Tice, Jr.
DOUGLAS O. TICE JR.
CHIEF UNITED STATES BANKRUPTCY JUDGE

Copies to:

Lynn L. Tavenner, Esq.
Paula S. Beran, Esq.
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, Virginia 23219
Counsel for Keith L. Phillips, Trustee

Christopher L. Perkins, Esq.
LeClair Ryan
P.O. Box 2499
Richmond, Virginia 23218
Counsel for Defendant Ghassan Habboush

Robert B. Van Arsdale, Esq.
Assistant United States Trustee
Office of the United States Trustee
600 East Main Street, Suite 301
Richmond, Virginia 23219

Keith L. Phillips, Trustee
311 South Boulevard
Richmond, VA 23220